IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BILAL SHABAZZ,**                                   Case No. 1:17 CV 519

       Plaintiff,

       v.                                    Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                             MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Bilal Shabazz ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 4). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on December 20, 2013, alleging a disability onset date of October 2, 2008. (Tr. 205-17). His claims were denied initially and upon reconsideration. (Tr. 141-56, 160-71). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 172-74). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on December 8, 2015. (Tr. 32-77). On February 3, 2016 the ALJ found Plaintiff not disabled in a written decision. (Tr. 12-26). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-5); *see* 20

C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on March 14, 2017. (Doc. 1).

**FACTUAL BACKGROUND**[1]

Personal Background and Testimony

Plaintiff was born on July 6, 1964, was 44 at his alleged onset date, and was 51 at the time of the hearing. (Tr. 24, 80). He had a high school education and previously worked as a machine feeder, which is medium, unskilled work. (Tr. 39-40, 62, 254-55). Plaintiff claimed he became disabled in October 2008. (Tr. 211).

Plaintiff testified he could not keep a job because of verbal and physical altercations with supervisors and coworkers. (Tr. 40, 58). He carried a utility knife or an ice pick, prompted by increased anger and irritability toward people. (Tr. 40-41). He felt ready to "snap at any moment", and kept the knife with him "just to slash somebody's neck . . . or just rip their midsections so their intestines are falling out." (Tr. 41). One prior job ended when he broke a coworker's nose, and another ended for punching someone in the mouth. *Id.* Plaintiff could cook, clean, do laundry, and go shopping. (Tr. 46-49). He did not have friends, did not socialize, and testified to getting confrontational with a neighbor who knocked on his door. (Tr. 48). To avoid violent confrontations, Plaintiff said he kept to himself. (Tr. 55-56). Plaintiff's prescribed medication reduced his angry flare-ups, but also left him heavily sedated. (Tr. 60-61).

---

1. Plaintiff challenges only the ALJ's consideration of medical opinions related to his mental impairments. (Doc. 13, at 3). Plaintiff waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). As such, the undersigned summarizes only the relevant records and testimony.

<u>Relevant Medical Evidence</u>

No relevant medical evidence exists from the alleged onset date until December 2013, when Plaintiff saw Neal Goldenberg, M.D., of Frontline Services for mental health issues. (Tr. 405-06). Plaintiff told Dr. Goldenberg he had problems with his temper, and would smash and break things when frustrated. (Tr. 405). Dr. Goldenberg noted a twenty-year history of homelessness, including a ban at a homeless shelter because of a confrontation with a staff member, along with repeated difficulties holding a job due to Plaintiff's inability to accept criticism. *Id*. He isolated himself, and Dr. Goldenberg described him as irritable. *Id.* Plaintiff reported daily bouts of depression, along with passive suicidal ideation, but had no history of attempts nor a plan to attempt suicide. *Id.* Plaintiff came to the evaluation appropriately groomed, fully oriented, and had a normal stream of conversation with reality-based thoughts. (Tr. 406). His memory was intact, and Plaintiff denied any hallucinations. *Id.* His capacity for abstract thinking was intact. *Id.* Dr. Goldenberg diagnosed Plaintiff with Intermittent Explosive Disorder and Chronic Adjustment Disorder with mixed depression and anxiety. *Id.* Plaintiff was prescribed Citalopram and Hydroxyzine, with the recommendation that he participate in therapy, counseling, and anger management. *Id.*

In October 2014, Plaintiff again visited Dr. Goldenberg. During the examination, Plaintiff told Dr. Goldenberg his medication helped control the violent impulses and behavior, but caused him to feel sedated. (Tr. 442). Dr. Goldenberg noted Plaintiff's loud and occasionally dramatic speech, along with his paranoia and his "having to destroy and smash things". *Id.* Plaintiff

continued to cope by self-isolating. *Id.* Plaintiff reported a misunderstanding with a case worker that did not result in Plaintiff smashing things. *Id.*

In December 2014, Plaintiff returned to Dr. Goldenberg and continued his complaints of sedation from Seroquel. (Tr. 441). Plaintiff told Dr. Goldenberg "I'm happy with the way things are." *Id.* He continued isolating himself from others, but Dr. Goldenberg noted Plaintiff seemed ultimately okay with the isolation. *Id.* During the visit, Plaintiff's speech was somewhat rapid, and he was vaguely paranoid about other's intentions. *Id.*

In February 2015, Plaintiff told Dr. Goldenberg he was still irritable when someone approached him "foolishly", but nothing was new. (Tr. 440). He was walking away from potentially explosive situations, had no recent violence or outbursts, and still tended to isolate. *Id.* Plaintiff reported continued use of his medication, which was helpful but caused sedation. *Id*. His affect remained constricted. *Id.*

Plaintiff saw Dr. Goldenberg in July and September 2015. (Tr. 463-469). He said he was "doing ok" in July. (Tr. 465). Plaintiff continued to isolate himself. (Tr. 465,469). In July, he handled a potential conflict assertively without violence (Tr. 465), but in September reported he "got explosive" with his mom and sister, who then were not speaking with him as a result (Tr. 469). He continued to carry a weapon. (Tr. 469). Dr. Goldenberg noted no recent examples of physical altercations, despite his past history. (Tr. 468). Dr. Goldenberg worried about the prospect of any conflict escalating to violence. (Tr. 469).

<u>Opinion Evidence</u>

David House, Ph.D., conducted a psychological consultative evaluation of Plaintiff in February 2010. (Tr. 301-08). Plaintiff had a "very mild menacing quality", according to Dr. House, though Plaintiff did not actively present himself as menacing. (Tr. 304). He had an "angry undercurrent" with a "brittle quality to his presentation". *Id.* Plaintiff's speech was "marked by pressure" but understandable and did not lack content. *Id.* During the examination, Plaintiff's eye contact was adequate, and no overt delusional material was elicited in the interview. (Tr. 305). He had a mild paranoid quality, but was not evasive or suspicious. *Id.* Plaintiff told Dr. House he intermittently became depressed, and could also be impulsive. (Tr. 304-05). Plaintiff stated he had impulsive thoughts about an airplane crash from his time in the military, and about a childhood incinerator blast that did not do significant physical damage but still prompted flashbacks. (Tr. 305). He also experienced mood swings and depersonalization. *Id.* He told Dr. House he can be with people he knows but avoids crowds. *Id.* Plaintiff could "feel the jealousy of envious people", prompting Dr. House to believe Plaintiff had some enemies at the homeless shelter where he stayed.[2] *Id.* His insight into his current situation and overall level of judgment appeared mildly limited. (Tr. 306). Dr. House concluded that the Plaintiff suffered from Post-Traumatic Stress Disorder ("PTSD"), which mildly limited his ability to maintain attention and concentrate, along with his ability to perform simple repetitive tasks. (Tr. 307). His ability to withstand pressures and

---

2. Plaintiff lived in an apartment, according to his Supplemental Security Income application. (Tr. 205). He had lived there since September 2009, according to that application, which he filed in December 2013. *Id.* Dr. House's psychological evaluation lists the same address for the Plaintiff as he wrote on that application. (Tr. 303).

stresses associated with day-to-day work activity appeared markedly limited due to his PTSD, as was his ability to relate to others, though he did not appear to require immediate supervision in the management of his daily activities. *Id.* His ability to adapt appeared moderately limited. *Id.*

In January 2014, Dr. Goldenberg completed a Mental Status Questionnaire for the Disability Determination Services. (Tr. 408-10). In the questionnaire, Dr. Goldenberg noted Plaintiff was highly irritable, got into fights, and had a poor response to direction and criticism. (Tr. 409). "He becomes agitated and aggressive in situations where he is criticised [sic] by supervisors or fellow employees. This has led to verbal and physical altercations. He has also been destructive of property when frustrated with supervisor at work", Dr. Goldenberg noted. *Id.* He considered Plaintiff's adaptation skills fair. *Id.* Plaintiff had an appropriate appearance at this examination, along with normal conversation flow, no signs of anxiety or thought disorders, and fully intact cognitive functioning. (Tr. 408). Dr. Goldenberg considered Plaintiff fully capable of remembering, understanding, and following directions; maintaining attention; sustaining concentration, persisting at tasks, and completing them in a timely fashion. (Tr. 409). During this office visit, Plaintiff reported he was "maintaining and managing", though still enduring some anxiety and depression. (Tr. 426). Plaintiff noted some improvement with medication, and Dr. Goldenberg doubled his dosage of Citalopram to 40 mg. (Tr. 426).

Also in January 2014, Patricia Semmelman, Ph.D., a state agency reviewing psychologist, listed Plaintiff's affective disorder, anxiety disorder, and personality disorder as severe impairments. (Tr. 87). She opined Plaintiff could complete simple, routine work tasks in a static environment with simple, superficial interactions with coworkers and supervisors, and without

fast-paced production requirements or direct contact with the general public. (Tr. 89-90). Dr. Semmelman also opined Plaintiff would have mild restrictions in daily living activities and maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning. (Tr. 86).

In March 2014, Cynthia Waggoner, Psy.D., also a state agency reviewing psychiatrist, agreed with Dr. Semmelman's opinion that Plaintiff was limited to simple, routine tasks in a static work environment free from fast-paced production requirements and no contact with the general public. (Tr. 134). She opined Plaintiff remained capable of simple, superficial interactions with coworkers and supervisors. *Id.* She found the February 2010 opinion of Dr. House (Tr. 301-08) less persuasive for its lack of substantial support from other evidence in the record and its heavy reliance on the subjective reports provided by Plaintiff. (Tr. 135).

In September 2014 Plaintiff saw Dr. Goldenberg again. (Tr. 436-37). Dr. Goldenberg completed a Mental Residual Functional Capacity Assessment, noting Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to sustain an ordinary routine without special supervision, and to work in coordination with or proximity to others without being distracted by them. (Tr. 436). Dr. Goldenberg also found Plaintiff markedly limited in his ability to complete a normal workday and workweek without interruptions, to interact appropriately with the general public, to accept instruction and criticism from supervisors, to get along with coworkers, and to maintain socially appropriate behavior. (Tr. 437). To support his conclusions, Dr. Goldenberg noted Plaintiff had been homeless or incarcerated most of his life. *Id.* Plaintiff was frequently in verbal altercations,

and was highly distractible and irritable, Dr. Goldenberg noted, adding "I would not want him to be in a regular workplace for fear of violence towards coworkers". *Id.*

In June 2015, Mark Anderson, M.S., CDMS, LPC, assessed Plaintiff's residual employability. (Tr. 444). Plaintiff told Mr. Anderson his medication left him fatigued. (Tr. 446). On a typical day, Plaintiff said he would be awake for an hour before falling asleep for another one or two hours because of the medication's side effects. *Id.* He carried a weapon, either an ice pick or a utility knife, and he said he feared he would use a knife in a workplace to attack a coworker. *Id.* Plaintiff had no work skills that could transfer to other occupations, Mr. Anderson opined, due to Plaintiff's serious psychological symptoms and medication side effects. *Id.* His diagnosed PTSD, depression and Explosive Disorder, along with a Purdue Pegboard test result below the first percentile were offered as evidence by Mr. Anderson to support his conclusion that Plaintiff was not employable. (Tr. 448-49).

VE Testimony

A vocational expert appeared and testified at the hearing before the ALJ. (Tr. 62-64). The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience, who was limited in the way ultimately found by the ALJ's RFC. (Tr. 17). The VE testified such an individual could not perform Plaintiff's past work, but could perform other jobs in the national economy. (Tr. 63-64).

ALJ Decision

In her February 3, 2016 decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and had not engaged in

substantial gainful activity since his alleged onset date of October 2, 2008. (Tr. 14). He had severe impairments of peripheral vascular disease, post-traumatic stress disorder, chronic adjustment disorder with mixed depression and anxiety, intermittent explosive disorder, and paranoid personality disorder, but these impairments did not meet or medically equal the severity of a listed impairment individually or in combination. (Tr. 14-15). After consideration of the record, the ALJ concluded Plaintiff had the RFC to:

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967 (b) except the claimant has the ability to complete simple, routine tasks in a relatively static work environment without demands for meeting fast paced production requirements. He has the capacity for simple, superficial interactions with co-workers and supervisors on an infrequent basis but should not have direct contact with the general public.

(Tr.17). She then concluded Plaintiff was unable to perform his past relevant work as a machine feeder. (Tr. 24). However considering his age, education, work experience, and RFC, he could perform other jobs that exist in significant numbers in the national economy. (Tr. 25). Therefore, the ALJ concluded Plaintiff was not disabled from his alleged onset date of October 2, 2008, through the date of her decision. (Tr. 26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred in her evaluation of four opinions: 1) Dr. Goldenberg's January opinion; 2) Dr. Goldenberg's September opinion; 3) Dr. House's opinion; and 4) Mr. Anderson's opinion. Plaintiff argues all four opinions should have been given greater weight, and in Dr. Goldenberg's case, he should have received controlling weight. The Commissioner responds the ALJ's assessment of the medical opinion evidence comported with the regulations, and the RFC determination is supported by substantial evidence. For the reasons discussed below, the undersigned affirms the ALJ's decision.

### Dr. Goldenberg's January Opinion

Dr. Goldenberg issued his first opinion in January 2014, following Plaintiff's second visit. (Tr. 408-09). Plaintiff argues the opinion, which was given some weight (Tr. 22), should be given controlling weight. (Doc. 13, at 10). The Commissioner argues, despite the ALJ's reference to Dr. Goldenberg as a treating physician (Tr. 22), that Dr. Goldenberg had not established a relationship

of significant length to be considered a treating physician for his January opinion. (Doc. 15, at 10). The undersigned finds Dr. Goldenberg is not a treating physician for the purposes of his January opinion, precluding his opinion from receiving controlling weight. Additionally, the ALJ supported her evaluation of this opinion with substantial evidence.

A medical source becomes a treating source when the Plaintiff has seen him with "a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). That determination is made as of the time the opinion was rendered, and does not take into consideration any future visits. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th. Cir. 2006) (finding a single visit did not create a treating physician relationship when Plaintiff had prolonged mental health concerns). The ALJ referring to a source as a "treating physician" does not necessarily implicate the separate treating physician rules, if that source does not satisfy the criteria to be recognized as a treating physician. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485 (6th Cir. 2005) (finding a Plaintiff's two visits to a physician for a lengthy stretch of back pain did not make the physician a treating source).

Dr. Goldenberg first saw Plaintiff in December 2013 (Tr. 404-06), then again in January 2014, when he issued the opinion addressed by the ALJ (Tr. 22, 408-09). In addressing this opinion, the ALJ referred to Dr. Goldenberg as a treating source. *See* Tr. 22 ("Dr. Goldenberg is the claimant's treating psychiatrist."). Dr. Goldenberg's status as a treating physician is not determined by a single errant sentence from the ALJ. *Daniels*, 152 F. App'x at 490 ("The ALJ's failure to specifically address Dr. Pinson's opinion, despite casually referring to her as the treating

12

source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician."). Rather, it is determined by a series of criteria that Dr. Goldenberg was, at that time, not yet capable of satisfying. *Kornecky*, 167 F. App'x at 506 ("[T]he relevant inquiry is not whether [a doctor] might have become a treating physician in the future if [Plaintiff] had visited him again. The question is whether [the doctor] had the ongoing relationship with [Plaintiff] to qualify as a treating physician *at the time he rendered his opinion*.") (emphasis in original). Two visits is not a sufficiently long treating relationship to create a treating source relationship, as it does not allow the doctor to offer the "detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). For these reasons, the ALJ was not required to address Dr. Goldenberg's January opinion as a treating physician opinion.

Although not entitled to the weight of a treating physician, the weight assigned to Dr. Goldenberg's January opinion must be supported by substantial evidence. 20 C.F.R. § 404.1527(c). The relevant regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). The ALJ is required to weigh non-treating medical source opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). Although the ALJ need not provided "good reasons" for the weight assigned to non-treating source opinion, the findings made must still be supported by substantial evidence.

The ALJ addressed Dr. Goldenberg's January opinion as follows:

In January 2014, Dr. Goldenberg completed a mental status questionnaire on behalf of the claimant. In it, he noted he first saw the claimant in December 2013. He

observed that the claimant had some mood swings, but his mental status examination was otherwise unremarkable (Exhibit 7F, page 2). Dr. Goldenberg opined that the claimant was fully capable of remembering, understanding, and following directions; maintaining attention; sustaining concentration; persisting at tasks; and completing them in a timely fashion. He had a fair ability to adapt. During social interactions, the claimant was highly irritable. He responded poorly to directions and criticism. Dr. Goldenberg explained that the claimant had a history of workplace altercations and damage of property when frustrated with others (Exhibit 7F, page 3). The undersigned gives this opinion some weight. Dr. Goldenberg is the claimant's treating psychiatrist. His opinion is generally supported by his examinations and the record as a whole. However, the evidence of record does not indicate that the claimant has experienced any temper extremes since his alleged onset date. He has been able to appropriately deal with others. The undersigned also notes that Dr. Goldenberg had only met with the claimant on two occasions at the time he completed this opinion statement.

(Tr. 22).

The ALJ assigned the January opinion some weight, based on the support provided by Dr. Goldenberg's examinations, and the record as a whole. (Tr. 22). To support her finding, the ALJ concluded the record evidence provided no examples of significant altercations or temper extremes since the alleged onset date, and Plaintiff had appropriately dealt with others. *Id.* Both of these stated reasons are repeated throughout her analysis of other opinion evidence. The record includes examples of altercations after Plaintiff's alleged onset date, and the ALJ's analysis did not address pre-alleged onset date conflicts. However, her analysis regarding Plaintiff's appropriate dealings is supported by substantial evidence, and is sufficient to support her findings.

Plaintiff engaged in multiple altercations and temper extremes that were not addressed by the ALJ in her opinion. In September 2015, plaintiff had an explosive incident with his mother over the phone, at least temporarily severing his relationship with his mother and brother. (Tr. 59-60); (Tr. 469) ("Got explosive with his family and now his mom and sister won't talk to him. Says

mom 'gave me misinformation,' gave him the wrong time to pick him up at the airport, he lost his patience with her."). Plaintiff also testified to a verbal altercation prompted by a neighbor knocking on his apartment door, which necessarily occurred after the alleged onset date, as Plaintiff was homeless prior to the alleged onset date. (Tr. 48, 205). These altercations do not appear to have been considered by the ALJ when she stated Plaintiff had not experienced any temper extremes and used that as a basis to discount Dr. Goldenberg's opinion. Plaintiff's altercation with his mother is mentioned elsewhere in the opinion, and only in a glancing manner, without any discussion regarding Plaintiff's capacity to control himself or why it does not qualify as a significant altercation. (Tr. 20) ("The claimant reported he had recently lost his patience with his mother.").

Additionally, there is evidence of altercations pre-dating Plaintiff's alleged onset date, which were considered by Dr. Goldenberg. In notes from a visit in December 2013, Dr. Goldenberg noted prior altercations led to his banishment from a homeless shelter, an event which likely occurred prior to the alleged onset date. (Tr. 302, 405). Dr. Goldenberg also noted a destructive incident prompted by the termination of his food stamp benefits, at an unclear date. (Tr. 405). The ALJ's absolute statement of Plaintiff's altercation history also does not acknowledge Plaintiff's multiple on-the-job fights, which occurred prior to his alleged onset date. (Tr. 41) ("Well, I got into a fight maybe, I swung on a guy and bust his nose on one job…[a]nd hit another guy in his mouth.").. The ALJ is required to consider all the evidence in a case record when making her determination. 20 C.F.R. § 404.1520 (a)(3). Evidence that pre-dated the alleged onset date is not excluded from that regulatory requirement. *DeBoard v. Comm'r of Soc. Sec.*, 211

F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated in combination with later evidence, may help establish disability."). An ALJ can consider all the evidence without discussing each piece of evidence. "[I]t is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'" *Kornecky*, 167 F. App'x at 507-08 (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

In this case, the ALJ's absolute statement regarding temper extremes is not supported by the record. That statement raises a conflict between the record evidence and her own assessment, rather than leaving such conflicts "implicitly resolved". *Id.*[3]

---

3. The Commissioner argues, since the evidence of Plaintiff's altercations is self-reported, that the ALJ was right to discount Dr. Goldenberg's opinion since it relied on Plaintiff's subjective complaints. (Doc. 15, at 11) ("The ALJ reasonably determined that Dr. Goldenberg's treatment notes from his two appointments did not support the level of social limitations he assessed.") However, that is not what the ALJ found. She concluded the record provided *no* examples of temper extremes, not that the temper extremes in the record were insufficient to support Dr. Goldenberg's opinion. The record provides two examples of temper extremes after the alleged onset date, along with two temper extremes prior to the alleged onset date that provided some support for Dr. Goldenberg's opinion. In short, while the self-reported nature of Plaintiff's complaints could be a reason for discounting Dr. Goldenberg's opinion, the ALJ did not offer that as a reason for her conclusion, and so the undersigned cannot consider it. *See Williams v. Comm'r of Soc. Sec.,* 227 F. App'x 463, 464 (6th Cir. 2007) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)) (a reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely on the grounds invoked by the agency); *see also Bray v. Comm'r of Soc. Sec.,* 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

However, the ALJ's second reason for discounting Dr. Goldenberg's opinion is accurate, accounts for the record as a whole, and provides substantial evidence. Plaintiff is capable of going grocery shopping and using public transportation. (Tr. 49). He can go to the library. (Tr. 49-50). This, the ALJ concludes, shows Plaintiff is not as restricted socially as Dr. Goldenberg opined. Dr. Goldenberg, in this January opinion, opined Plaintiff responded to stress with verbal and physical altercations along with property destruction. (Tr. 409). The ALJ, in her analysis, discounted the severity of Dr. Goldenberg's opinion, but did not dismiss it altogether. She found Plaintiff's testimony and other opinion evidence credible enough to support limiting Plaintiff to "simple, superficial interactions with co-workers and supervisors on an infrequent basis". (Tr. 17). She did not find Plaintiff had a limitless capacity for social interaction. Plaintiff's ability to go to the grocery store, ride the bus, and go to the library shows he is capable of some superficial interaction. Further, the ALJ's statement that Plaintiff "has been able to appropriately deal with others" (Tr. 22) is supported by record evidence. *See* Tr. 442 (Dr. Goldenberg's October 2014 note that Plaintiff had no recent violent outbursts and medication was helping); Tr. 440 (February 2015 note that Plaintiff had "[n]o recent aggression" and "[h]as been walking away from situations"); Tr. 465 (July 2015 note that Plaintiff "handled [a conflict] assertively without violence"); Tr. 468 (September 2015 notation that Plaitniff had "[p]as thx of fighting, but none recently")

Since, for this opinion, Dr. Goldenberg is not yet a treating physician, only substantial evidence is required to uphold the ALJ's decision. "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw*, 966 F.2d at 1030. This is a deferential standard, and even if substantial evidence supports Plaintiff's

position, the undersigned must uphold the ALJ's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. The ALJ assigned Dr. Goldenberg's opinion some weight, and is supported by substantial evidence in her finding.

Dr. Goldenberg's September opinion[4]

In September 2014, Dr. Goldenberg issued a second opinion regarding Plaintiff's residual functional capacity. The ALJ assigned the opinion little weight. (Tr. 22-23). Plaintiff argues Dr. Goldenberg's September opinion should have been granted controlling weight and, in the alternative, granted more weight by the ALJ. The Commissioner argues the opinion was properly discounted, and the ALJ provided good reasons for discounting Dr. Goldenberg's opinion. For the following reasons, the undersigned affirms the ALJ's opinion.

A treating physician's opinion is given "controlling weight" if it is supported by: (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, she must provide evidentiary support for such a finding. *Id*. at 546; *Gayheart,* 710 F.3d at 376-77. When the physician's opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the

---

4. Neither party, nor the ALJ, dispute Dr. Goldenberg's status as a treating physician when he rendered his September 2014 opinion, after seeing Plaintiff for an additional two visits. (Tr. 425).

reasons for that weight." *Wilson*, 378 F.3d at 544.

When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. While an ALJ is required to delineate good reasons, she is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion"— not an exhaustive factor-by-factor analysis." (quoting 20 C.F.R. § 404.1527(d)(2))).

Plaintiff alleges the ALJ skipped the first portion of the required, two-part analysis by not analyzing whether Dr. Goldenberg's opinion should be afforded controlling weight. Instead, Plaintiff argues, the ALJ leapt to the five-factor test in determining what weight to assign. (Doc. 13. at 12). The Commissioner argues the ALJ properly discounted Dr. Goldenberg's September opinion because the opinion was not supported by his treatment notes, and she provided the required good reasons.

The ALJ assessed Dr. Goldenberg's September opinion separately from his January opinion:

> Dr. Goldenberg submitted an updated assessment in September 2014. In it, he opined that the claimant was markedly limited in his ability to maintain attention

and concentration for extended periods; in his ability to maintain a schedule; in his ability to sustain an ordinary routine without special supervision; in his ability to work in coordination with others without being distracted by them; and his ability to perform work at a consistent pace. He was moderately limited in his ability to carry out detailed instructions and to make simple work-related decisions (Exhibit 13F, pages 2-3). Socially, he had marked limitations in his ability to interact appropriately with the public, supervisors, and coworkers. He had marked limitations in his ability to maintain socially appropriate behavior. He had moderate limitations in responding appropriately to changes in the work setting and his ability to use public transportation or to travel to unfamiliar places (Exhibit 13F, page 3). Dr. Goldenberg explained that the claimant was paranoid about others, got into frequent verbal altercations, and was highly distractible and irritable. Dr. Goldenberg did not want him to be in a regular workplace for fear of violence towards coworkers (Exhibit 13F, page 3). The undersigned gives this opinion little weight. While Dr. Goldenberg is a treating source, his treatment notes and the evidence as a whole are not consistent with this evaluation. The evidence does not indicate any marked limitations in the claimant's ability to maintain his attention. He appears capable of maintaining a schedule; he does not have a history of missing appointments. He can follow and carry out instructions, as evidence by the claimant doing his own shopping and cooking of multi-course meals. The current record shows that the claimant has not had any significant altercations with others since October 2008. He is able to use public transportation, go to the laundromat, and buy groceries without behaving inappropriately.

(Tr. 22-23).

The ALJ does collapse her analysis into one step but, contrary to Plaintiff's argument, the two steps do not need to be broken apart when the analysis is substantially the same. "In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6)." *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 557 (N.D. Ohio 2014). The relevant regulations make clear the supportability of a treating source's opinion by his own notes, along with the consistency of that opinion with the record as a whole,

are factors used to evaluate an opinion for assigning controlling weight, and for assigning whatever lesser weight an ALJ gives the opinion. 20 C.F.R. §§ 404.1527(c); 417.927(c). The emphasis on a two-step analysis is to ensure the ALJ applies the rule, and to provide meaningful review of the ALJ's analysis. *Wilson*, 378 F.3d at 544. The ALJ achieved those two goals with her analysis.

Whatever the format of her analysis, the ALJ's conclusions regarding a treating physician must be supported by good reasons and substantial evidence. The reasons need to be clear enough to allow a claimant to understand why an administrative bureaucracy has found him not disabled despite the treating physician's opinion to the contrary. *Id.* Every finding of fact must be supported by substantial evidence. *Walters*, 127 F.3d at 528.

In her analysis, the ALJ focused on two portions of Dr. Goldenberg's opinion, putting forward reasons for discounting his two most severe opinions, which addressed Plaintiff's social functioning abilities and Plaintiff's abilities to sustain concentration and persistence. Both reasons are supported by substantial evidence, and the ALJ's analysis is sufficient to satisfy the "good reasons" requirement.

First, the ALJ correctly noted Dr. Goldenberg provided little in his treatment notes to support his opinions regarding Plaintiff's capacity to concentrate and persist. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1 at 12.00 (C)(3). Dr. Goldenberg noted Plaintiff is "highly distractible". (Tr. 437). However, no missed appointments are noted in Dr. Goldenberg's treatment records, or elsewhere in medical records. Plaintiff also testified to maintaining his own

cooking and shopping schedule, and following recipes he found at the library. (Tr. 46-49). The ALJ found this showed Plaintiff was able to "follow and carry out instructions." (Tr. 23). Thus, the ALJ provided substantial evidence to discount Dr. Goldenberg's concentration, persistence, and pace restrictions.

Second, the ALJ's reasons for discounting Dr. Goldenberg's social interaction opinions are supported by substantial evidence. The ALJ offered Plaintiff's lack of altercations since the alleged onset date, coupled with his ability to ride the bus and go to laundromats and grocery stores to discount the opinion. *See* Tr. 23. These are essentially the same reasons provided for discounting Dr. Goldenberg's January opinion. *See Wright v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 104283 at *24 (finding a Plaintiff's capacity to prepare meals and shop independently supported a superficial interaction limitation in the RFC) *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 104270. Additionally, as noted above, the ALJ's opinion that Dr. Goldenberg's "treatment notes . . . are not consistent with this evaluation" is supported by Dr. Goldenberg's notes that Plaintiff was successfully avoiding confrontations. *See* Tr. 440, 442, 465, 468. Though the ALJ's reason regarding Plaintiff's complete lack of altercations is not fully supported by the record as noted above, her reason regarding Plaintiff's capacity to interact with others is supported by substantial evidence, and is sufficient to satisfy the good reasons rule.

Dr. House's opinion

Plaintiff argues the ALJ's analysis of Dr. House's opinion is not supported by substantial evidence. The Commissioner argues the ALJ's analysis is supported by the same substantial

evidence that supported discounting Dr. Goldenberg. For the reasons stated below, the undersigned

finds the ALJ's consideration of Dr. House's opinion supported by substantial evidence

The ALJ summarized Dr. House's February 2010 consultative examination and opinion:

Dr. House noted the claimant's grooming was adequate. The claimant reported intermittent episodes of depression without crying spells or suicidal thoughts. He did not like to be around crowds but did not have difficulty being around someone he knew. He reported flashbacks, mood swings, and depersonalization. He appeared subdued but had a very mild menacing quality. His speech was pressured but understandable.

However, the claimant was oriented to person, place, time, and situation. The claimant maintained adequate eye contact during his evaluation. Dr. House noted there were no loose associations. He reported having fair sleep and denied having nightmares. His appetite was good. His concentration and attention were mildly limited. His pace was adequate, and he was persistent. His memory was intact (Exhibit lF, pages 4-6). Dr. House diagnosed the claimant with PTSD (Exhibit lF, page 7).

(Tr. 19). She then assigned the opinion "limited weight".

Dr. House opined that the claimant was able to perform simple, repetitive tasks. His ability to withstand stress and pressure associated with day-to-day work activity appeared markedly limited. His ability to relate to others appeared markedly limited. His level of adaptability appeared moderately limited. He did not appear to require immediate supervision in his daily activities or in the handling of his finances (Exhibit lF, pages 6-7). The undersigned gives this opinion limited weight. Later received evidence shows that the claimant has not experienced any significant explosive episodes to suggest an inability to tolerate stress. He manages his daily activities independently. He has not gotten into any altercations with others. His mental status examinations and presentation during appointments do not support the severity of Dr. House's evaluation.

(Tr. 23).

The parties agree Dr. House's opinion is consistent with that of treating physician Dr.

Goldenberg. Plaintiff argued the consistency as a reason for greater weight, while the

Commissioner argues its consistency with a properly discounted opinion leads the ALJ to properly discount Dr. House as well.

As a non-treating physician, the weight assigned to Dr. House's opinion does not require good reasons. *See Gayheart*, 710 F.3d at 376 ("[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'"). However, the weight assigned must still be supported by substantial evidence. *McClanahan*, 474 F.3d at 833 ("The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive….") (citing 42 U.S.C. § 405(g)). The analysis for Dr. House is, as argued by both parties, tied closely to the analysis of Dr. Goldenberg's opinion. The ALJ relied on the same reasons, the lack of altercations in the post-alleged onset date record and Plaintiff's ability to maintain daily activities, to discount Dr. House as she did to discount Dr. Goldenberg. Additionally, subsequent mental status examinations do not demonstrate the sort of social limitations Dr. House provided, for the same reasons: lack of repeated altercations and managing his daily activities. For the abovementioned reasons, the ALJ's consideration of Dr. House's is supported by substantial evidence.

Mr. Anderson's opinion

Vocational consultant Mark Anderson evaluated Plaintiff in June 2015. (Tr. 444). The ALJ summarized Mr. Anderson's findings and opinion, before assigning it limited weight.

> Mark Anderson, M.S., CDMS, LPC, completed a vocational assessment of the claimant in June 2015. Mr. Anderson concluded that the claimant had limited access to the labor market due to his history of altercations in the workplace, his lack of transferable skills, the severity of his mental conditions, his reading level, his difficulty in manipulating objections, and the side effects of his medications. Mr. Anderson believed that the claimant was not currently employable (Exhibit 15F, pages 6-7). As noted above, a finding that an individual is unable to work is an opinion reserved for the Commissioner. Mr. Anderson's assessment is given

limited weight. Mr. Anderson is not an acceptable medical source. He evaluated the claimant on just one occasion. His statement is not consistent with the medical evidence, which does not indicate any significant manipulative difficulties. The claimant has not reported side effects from his medications to Dr. Goldenberg since December 2014 (Exhibit 14F, page 4). Though the claimant alleges a history of altercations, there is no evidence in the current record that the claimant has been unable to manage his mood since his alleged onset date.

(Tr. 23-24).

Plaintiff argues the ALJ should have granted more weight to Mr. Anderson's opinion, even though it was not a medical opinion. The Commissioner argues the opinion was primarily a legal opinion on an issue reserved to the Commissioner, and that further discounting of the opinion was supported by substantial evidence.

"The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has the discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248 (6th Cir. 2015) (quoting *Walters*, 127 F.3d at 530). The term "acceptable medical source" means licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513 (prior version).

Opinions from those who are not "acceptable medical sources"—or as the regulations define them, "other sources"—may be used by an ALJ to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d), 416.913(d); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Other source opinions are entitled to consideration by an ALJ, and an ALJ's decision should reflect such consideration. *Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011); *see also* SSR 06-03p, 2006 WL

2329939, at *3 (explaining "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file"). In other words, an ALJ "should explain the weight given to [such] opinions ... or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6; *see also Cruse,* 502 F.3d at 541. As one court explained, "[t]he Sixth Circuit . . . appears to interpret the phrase 'should explain' as indicative of suggesting that the ALJ explain the weight [given to an 'other source' opinion], as opposed to leaving the decision whether to explain to the ALJ's discretion". *Hatfield v. Astrue*, 2008 WL 2437673, at *3 (E.D. Tenn.) (citing *Cruse*, 502 F.3d at 541-42).

"SSR 06-03p . . . does not require that an adjudicator articulate 'good reasons' for the rejecting of an 'other source's' opinion[,]" as the ALJ must do when discounting an opinion by a treating source. *York v. Comm'r of Soc. Sec.,* 2014 WL 1213240, at *5 (S.D. Ohio) (citations omitted); *see also Clark ex rel. S.R.C. v. Comm'r of Soc. Sec. Admin.*, 2013 WL 3007154, at *9 (N.D. Ohio) ("An ALJ is not required to set forth good reasons for rejecting the opinion of a social worker."). Nor is an "other source" opinion "entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 558 (6th Cir. 2014). And, an ALJ has "broad discretion" in weighing "other source" opinion. *Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015).

However, to evaluate other source opinions, an ALJ should apply the factors set forth in 20 C.F.R. §§ 404.1527(c) and 419.927(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related

to the individual's impairment(s). *Adams v. Colvin*, 2014 WL 5782993, at *8 (S.D. Ohio); SSR 06-03p, 2006 WL 2329939, at *4-5.

In her assessment, the ALJ properly rejected Mr. Anderson's conclusion that Plaintiff was unemployable, as that decision is reserved to the Commissioner. (Tr. 23); *see* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). She then considered the treatment history, which in this case was a single examination. The longer the relationship between the source and the patient, the more weight is generally assigned to a given opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Therefore, Mr. Anderson's single visit is a valid reason to support assigning limited weight to the opinion. Additionally, she found Mr. Anderson's report of manipulative difficulties inconsistent with the record, since his pegboard test is the only mention in the record of any manipulative difficulties. (Tr. 450). However, other analysis misstates the record. The ALJ erroneously stated Plaintiff had ceased suffering the side effects of his medication in December 2014. (Tr. 24). The page immediately prior to the record cited to support her conclusion shows, in February 2015, Plaintiff still reported sedation, as he had on numerous occasions. (Tr. 440 (sedation reported in February 2015), Tr. 439 (sedation reported in December 2014), Tr. 442 (sedation reported in October 2014)). During the hearing in December 2015, Plaintiff testified the medication made him heavily sedated. (Tr. 60-61). Additionally, the ALJ relies again on the lack of altercations in Plaintiff's record, which does not take into account the multiple altercations mentioned above.

Mr. Anderson is not an acceptable medical source. Therefore, the ALJ has broad discretion in weighing the opinion. *See Brown*, 591 F. App'x at 451. Though the ALJ misstated portions of the record, on the whole, her assessment of Mr. Anderson's opinion is supported by substantial

evidence. Mr. Anderson's opinion regarding Plaintiff's employability, the inconsistency regarding Plaintiff's manipulative difficulties, and the single examination, along with the wide latitude afforded to the ALJ in assessing other source opinion, is sufficient to support the ALJ's conclusion.

Even if not supported by substantial evidence, any error regarding Mr. Anderson's opinion would be harmless, and the ALJ's opinion would still be affirmed. When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). Even if the ALJ erred in her analysis of Mr. Anderson's opinion, the undersigned sees no reason remand would lead to a different result. The ALJ properly discounted the opinion of Plaintiff's treating physician, and two non-treating physicians based on substantial evidence. Mr. Anderson is also not a medical source, leading the undersigned to conclude any such error is harmless.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI supported by substantial evidence and affirms that decision.

s/James R. Knepp II
United States Magistrate Judge